## ORAL ARGUMENT REQUESTED

## No. 18-35218

## In the United States Court of Appeals for the Ninth Circuit

Zayn al-Abidin Husayn, et al,

*Appellants*,

v.

James Mitchell, et al,

*Appellees*.

**Appeal from the United States District Court
for the Eastern District of Washington, No. 2:17-cv-171-JLQ
The Honorable Justin L. Quackenbush, Presiding**

## APPELLANTS' OPENING BRIEF

David F. Klein
david.klein@pillsburylaw.com
John Chamberlain
john.chamberlain@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
(202) 663-8000

Jerry Moberg
jmoberg@jmlawps.com
Jerry Moberg & Associates
451 Diamond Drive
Ephrata, WA 98823
(509) 754-2356

Dated: June 25, 2018                    *Attorneys for Appellants*

## DISCLOSURE STATEMENT

Appellants Zayn al-Abidin Muhammed Husayn ("Abu Zubaydah") and

Joseph Margulies are individuals.

 /s/ David F. Klein
Attorney for Appellants

# TABLE OF CONTENTS

DISCLOSURE STATEMENT……………………………………………………...i

TABLE OF CONTENTS............................................................................. ii

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF JURISDICTION....................................................... 1

STATEMENT OF THE ISSUES............................................................ 1

STATEMENT OF THE CASE............................................................... 1

I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY .................... 4

        A.      Abu Zubaydah Is Detained and Tortured in Poland; the European
                Court of Human Rights Enters an Adverse Judgment Against the
                Polish Government. ................................................................4

        B.      Appellants File an Application in the District Court Seeking
                Evidence in Aid of the Renewed Polish Investigation.........................7

        C.      The Government Opposes the Application Through a "Statement
                of Interest"; the Court Grants the Application. ....................................9

        D.      Appellants Serve the Subpoenas and the Government Moves to
                Quash; the Court Grants the Government's Motion and
                Dismisses the Application. ..................................................11

II.     STANDARD OF REVIEW……………………………………………...16

III.    SUMMARY OF THE ARGUMENT .......................................................... 16

IV.     ARGUMENT.................................................................................... 18

        A.      The State Secrets Doctrine Permits Dispositive Relief Only
                Under Narrow Circumstances Not Present Here. ...............................19

        B.      The District Court Erred in Holding that the *Reynolds* Privilege
                Required Dismissal, Where the Privileged Information at Issue
                Is Not "Inseparable" from Non-Privileged Information. ...................22

1.      At Most, the Application Sought Both Privileged and
        Non-Privileged Matter. ............................................................25

2.      The District Court Improperly Inserted Its Own Views
        of the Utility of Non-Privileged Matter Into Its
        Consideration of the Motion to Quash....................................30

3.      The District Court Had Discretion to Reform the
        Subpoenas ...............................................................................33

CONCLUSION .................................................................................... 36

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ..................................... 38

STATEMENT REGARDING PRIOR AND RELATED APPEALS ................... 40

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Astra Medica, S.A.*,
  981 F.2d 1 (1st Cir.1992) ...................................................................31

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) .................................................................31

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d. Cir. 1995) ................................................30, 31, 34

*Intel Corp. v. AMD, Inc.*,
  542 U.S. 241 (2004) ...................................................................*passim*

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,
  539 F.2d 1216 (9th Cir. 1976) ............................................................31

*MGIC Indem. Corp. v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) ...............................................................5

*Mohamed v. Jeppesen Dataplan*,
  614 F.3d 1070 (9th Cir. 2010) ....................................................*passim*

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
  634 F.3d 557 (9th Cir. 2011) .............................................................10

*In re Request for Judicial Assistance from Seoul Dist. Criminal Court,
  Seoul, Korea*,
  555 F.2d 720 (9th Cir. 1977) .............................................................31

*United States v. Reynolds*,
  345 U.S. 1 (1953) ........................................................................*passim*

*Tenet v. Doe*,
  544 U.S. 1 (2005) ...............................................................................20

*Totten v. United States*,
  92 U.S. 105 (1876) .......................................................................20, 21

*Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*,
    454 U.S. 139 (1981)........................................................................................20

## Statutes and Codes

United States Code
    Title 28, section 1291.......................................................................................1
    Title 28, section 1782...............................................................................*passim*
    Title 28, section 1782(a) ...........................................................................8, 30
    Title 28, section 2241(e)(2) .............................................................................12

## Rules and Regulations

Federal Rules of Appellate Procedure
    Rule 32(a)(5).....................................................................................................38
    Rule 32(a)(6).....................................................................................................38
    Rule 32(a)(7)(B)................................................................................................38
    Rule 32(a)(7)(B)(iii) .........................................................................................38

Federal Rules of Civil Procedure
    Rule 26(b)(1).....................................................................................................32

Federal Rules of Evidence
    Rule 201(b)(2).....................................................................................................5

## Other Authorities

Hans Smit, *Recent Developments in International Litigation*,
    35 S. TEX. L.J. 215 (1994).................................................................................31

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1782.  The district court entered judgment dismissing Appellants' Application for Discovery on February 21, 2018.  Appellants' Excerpts of Record at 44–64 (hereafter, "EOR __").  Appellants lodged a timely notice of appeal on March 15, 2018.  EOR 65; Fed. R. Appellate P. 4(a)(1)(A). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Did the district court err in quashing Appellants' subpoenas *in toto* based on the state secrets privilege, where the subpoenas sought at least some information that is neither protected by the state secrets privilege nor inseparable from information protected by the privilege?

## STATEMENT OF THE CASE

In 2002, Appellant Abu Zubaydah was captured by U.S. agents as an alleged "enemy combatant" and, while in United States custody, transferred to various CIA "black sites" in foreign countries, where he was tortured as part of the CIA's "Enhanced Interrogation Program."  In support of Abu Zubaydah's detention, the CIA took the position that Abu Zubaydah was the "third or fourth man" in al Qaeda and had been "involved in every major terrorist operation carried out by al Qaeda," a position for which a report of the Senate Select Committee on Intelligence has since determined that there is no basis.  EOR 355–56.

1

Nevertheless, Abu Zubaydah continues to be held in custody today at the U.S. detention facility in Guantánamo Bay, Cuba.

Attorneys for Abu Zubaydah have pursued various legal remedies on his behalf, including claims against foreign nationals who allegedly participated in or abetted violations of his human rights while he was incarcerated at CIA-operated "dark sites" overseas. In 2014, the European Court of Human Rights determined "beyond a reasonable doubt" that one such dark site was located in Poland. The court found that the Polish Government had breached its duty to conduct a thorough investigation of the Polish dark site and of Abu Zubaydah's confinement there. The court therefore ordered the Polish Government to pay damages to Abu Zubaydah, and the Polish Government renewed its criminal investigation concerning the participation of Polish nationals in possible crimes against him. That investigation, under the direction of prosecutorial authorities in Krakow, Poland, is ongoing.

Polish law authorizes the alleged victim of a crime to submit evidence in aid of a prosecutorial investigation. Under color of that authority, Polish prosecutors invited attorneys representing Abu Zubaydah in Poland to submit evidence in aid of their investigation. However, because of his incarceration and the refusal of U.S. authorities to make Abu Zubaydah's own testimony available in a foreign proceeding, he is unable to participate directly in the Polish prosecutor's

investigation. Accordingly, Appellants applied to the district court pursuant to 28 U.S.C. § 1782 for an order permitting Appellants to serve documentary and testimonial subpoenas on two private United States citizens: appellees James E. Mitchell and John "Bruce" Jessen. The record shows that that Messrs. Mitchell and Jessen visited CIA dark sites at the relevant time, and that they have personal knowledge regarding Abu Zubaydah's detention and interrogation at those sites. The district court initially granted Appellants' application; but after the subpoenas were served, the Government intervened and moved to quash, claiming that the subpoenas sought information protected by the state secrets privilege. The district court granted the Government's motion and quashed the subpoenas *in toto*—not because the court determined that the subpoenas sought exclusively privileged matter (to the contrary, it determined otherwise, EOR 58)—but because, in the court's view, the matter it deemed non-privileged "would not seem of much, if any, assistance to [the] Polish investigation." EOR 63.

The district court erred in granting dispositive relief on state secrets grounds based on its own view of what would or would not be useful to Polish investigators. Under the law of this Circuit, a court faced with the proper assertion of the state secrets privilege should dismiss the action only under narrow circumstances not present here—*i.e.*, where the matter cannot feasibly proceed without violating the privilege. The district court acknowledged that some of the

matter sought by Appellants' subpoenas was not privileged, but then failed to proceed as required: by quashing so much of the subpoenas as sought privileged material and permitting Appellants to discover non-privileged matter. This Court should reverse and remand with instructions that Appellants be permitted to execute their subpoenas and discover non-privileged matter, so that they may submit the resulting evidence to Polish investigators for their consideration.

## I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.     Abu Zubaydah Is Detained and Tortured in Poland; the European Court of Human Rights Enters an Adverse Judgment Against the Polish Government.

Abu Zubaydah is a stateless Palestinian held at the U.S. detention facility in Guantánamo Bay, Cuba. EOR 670. Appellant Joseph Margulies is his counsel. EOR 669-70. Abu Zubaydah was captured in Pakistan in March 2002 by U.S. and Pakistani agents and is now being held as an alleged "enemy combatant." EOR 669–70.

For several years after his capture, Abu Zubaydah was imprisoned in various CIA "dark sites" in foreign countries, where he was subjected to so-called "enhanced interrogation techniques"—torture—including waterboarding, prolonged confinement in cramped boxes, extended exposure to loud music and bright lights, starvation, repeated slapping, sleep deprivation, and other serious abuses. EOR 672–80; *see generally* Senate Select Committee on Intelligence:

4

Committee Study of the Central Intelligence Agency's Detention and Interrogation Program Report.[1]  From December 2002 until September 2003, Abu Zubaydah was imprisoned in a dark site in Stare Kiejkuty, Poland.  EOR 558.  A Senate Select Committee Report  regarding the CIA's interrogation program refers to this site by the alias "Detention Site Blue."  EOR 710; *see also* EOR 97–8 (*CIA Torture in Poland: Detention Site Blues*, THE ECONOMIST, December 11, 2014); EOR 100–104 (*The Hidden History of the CIA's Prison in Poland*, THE WASHINGTON POST, January 23, 2014).

In 2010, attorneys for Abu Zubaydah filed a criminal complaint in Poland seeking to hold Polish officials accountable for their complicity in Abu Zubaydah's unlawful detention and torture.  EOR 682–83.  However, the case was perpetually delayed; as of 2013, prosecutors had named no suspects and appeared to make no progress.  EOR 577–78.

In 2013, attorneys for Abu Zubaydah—including Appellant Joseph Margulies and his Polish co-counsel, Bartłomiej Jankowski—filed an application

---

[1]  Excerpts of the Committee's report were attached to Appellants' Application in the district court and their response to the United States' Statement of Interest. EOR 354–56, 694–716.  The entire report may be found at https://www.amnestyusa.org/pdfs/sscistudy1.pdf (last accessed June 20, 2018), and is a proper subject of judicial notice.  *See* Fed. R. Evid. 201(b)(2); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986) (federal court of appeals may take judicial notice of matters of public record).

against the Republic of Poland before the European Court of Human Rights, alleging that Abu Zubaydah was the victim of crimes on Polish soil, and that Poland had failed to investigate those crimes properly. EOR 683. In July 2014, the court ruled on that application, finding "beyond a reasonable doubt" that Abu Zubaydah was detained and interrogated in a CIA detention facility in Poland from December 2002 to September 2003 (EOR 558) and that the CIA's abuse of Abu Zubaydah amounted to torture (EOR 588–89). The court also found "abundant and coherent circumstantial evidence" leading to the "inevitab[le]" conclusion that "Poland knew of the nature and purposes of the CIA's activities on its territory at the material time," and that "Poland cooperated in the preparation and execution of the CIA rendition, secret detention and interrogation operations on its territory." EOR 567–68. In addition, the court determined that the Polish Government's investigation into the crimes committed against Abu Zubaydah had been legally deficient. EOR 581–82. The court also awarded damages to Abu Zubaydah. EOR 607.

After the court's judgment became final, the Polish Government renewed its investigation into the crimes alleged by Abu Zubaydah. That investigation continues to this day. On repeated occasions, the Polish Government sought evidence in support of the investigation directly from the United States under the Mutual Legal Assistance Treaty ("MLAT") in effect between the United States and

the Republic of Poland, but on each occasion the United States declined the Polish Government's requests. EOR 648.[2] Under Polish law, Abu Zubaydah, as the victim of alleged crimes, has procedural rights in the prosecutorial investigation, including the right to submit evidence in aid of the investigation through his attorneys, and the right to appeal any decision to close the investigation without initiating a prosecution. EOR 72–74. The Polish prosecutor has invited counsel for Abu Zubaydah to submit evidence in aid of the investigation. *Id.*

## B. Appellants File an Application in the District Court Seeking Evidence in Aid of the Renewed Polish Investigation.

On May 5, 2017, Appellants filed in the district court an application for discovery ("the Application") pursuant to 28 U.S.C. § 1782 ("Section 1782"). EOR 801. Section 1782 authorizes a federal district court to order discovery of documents and testimony for use in a foreign proceeding from any person who resides or is found in the court's district:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made … upon the application of any interested person and

---

[2] Indeed, the Polish Government argued before the European Court of Human Rights that the United States' non-cooperation had impeded the investigation. EOR 572 ("The need to obtain information from the US authorities had been, and continued to be, of crucial importance but the prosecutor's requests for legal assistance, including a request for the applicant's participation in procedural actions, had so far remained unsuccessful. That made the investigative tasks even more difficult.").

may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

In the Application, Appellants sought leave to serve subpoenas for documents and oral testimony on two United States private individuals: James E. Mitchell and John "Bruce" Jessen. Mitchell and Jessen are former CIA contractors who, by their own admission in an unrelated civil case, interrogated Abu Zubaydah at CIA dark sites. *Compare* EOR 727–732 (alleging Mitchell and Jessen interrogated Abu Zubaydah at dark sites) *with* EOR 738–41 (admitting the allegations in relevant part). As Appellants pointed out below, in another case before the same district court judge, the Government itself acknowledged Mitchell and Jessen's involvement. EOR 171–72 (citing *Salim v. Mitchell*, No. 2:15-cv-286-JLQ, ECF No. 85-1 at 2–3). And, according to the Senate Select Committee on Intelligence's report on the CIA's detention and interrogation program, Mitchell and Jessen visited "Detention Site Blue" at least twice. EOR 710–11 (referring to Mitchell and Jessen by the code names "SWIGERT" and "DUNBAR").

Appellants therefore sought evidence from Mitchell and Jessen in furtherance of Abu Zubaydah's right to submit evidence to Polish investigators. EOR 809–10 (Application). In general terms, the form of the subpoena to produce documents that Appellants submitted to the district court requested that Mitchell and Jessen produce any documents in their possession concerning: (a) the

establishment, operation, conditions and services at the dark site (Request Nos. 1, 2, 5, 6, 8, 9, and 11); (b) Polish officials involved at the dark site (Request Nos. 3, 4); (c) the Appellant himself (Request No. 7); (d) interrogation techniques, conditions of confinement, and torture (Request No. 10); (e) contracts between Polish Government officials or private persons residing in Poland and U.S. personnel for the use of property for the detention facility in Poland (Request No. 11); (f) any exchange of money between Polish officials and those operating the dark site (Request No. 12); and (g) flights to and from the location of the dark site during the relevant period (Request No. 13). EOR 826–27. The subpoena ad testificandum, of course, did not specify topics of deposition, but would necessarily have been confined to subjects permitted by the district court. EOR 818.

### C. The Government Opposes the Application Through a "Statement of Interest"; the Court Grants the Application.

On June 30, 2017, the United States submitted a "Statement of Interest," in which it urged the district court to deny Appellants' Application. EOR 645. The Government conceded that the Application met the minimum statutory requirements for relief under Section 1782, but argued that the Application should be denied under the discretionary factors articulated by the Supreme Court in *Intel*

*Corp. v. AMD, Inc.*, 542 U.S. 241 (2004).[3] EOR 653–54. The Government did not assert any privileges over the information sought by the subpoenas at that time.[4]

In response, Appellants argued that the *Intel* factors cut in favor of granting the Application and that the Government's objections were premature. EOR 357–60. The district court agreed with Appellants on both fronts. In a written opinion, the district court found that because Mitchell and Jessen were not participants in the Polish investigation, and the United States had denied cooperation to the Polish Government under the MLAT process, the first *Intel* factor cut in Appellants' favor. EOR 341. As to the second *Intel* factor, the district court concluded that "[t]he fact that the Polish government has sought information through the treaty process, and been denied by the United States Government[,] further demonstrates the Polish government would be receptive to receiving the information," supporting Appellants' position. *Id.* As to the third *Intel* factor, the court found

---

[3] As summarized by this Court, those factors are:

> [1] [W]hether "the person from whom discovery is sought is a participant in the foreign proceeding"; [2] "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; [3] whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; [4] and whether the request is "unduly intrusive or burdensome."

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (quoting *Intel*, 542 U.S. at 264-65) (brackets inserted).

[4] Mitchell and Jessen were provided notice of the Application, but did not oppose it. *See* EOR 46.

"nothing in the materials … to indicate that the Application seeks to circumvent Poland's proof-gathering restrictions or policies of Poland" and noted that the Polish Government had invited Abu Zubaydah to submit evidence supporting the investigation. EOR 341–42. But the court observed that, inasmuch as the United States had denied the Polish Government's MLAT applications, the application arguably offended the policies of the United States, and therefore, the court found that this *Intel* factor cut both ways. *Id.* Finally, the court noted Appellants' arguments under the fourth *Intel* factor that the burdens on respondents would be relatively de minimis, especially when balanced against the potential benefit to Polish prosecutorial authorities. EOR 342. Accordingly, weighing all the *Intel* factors, the district court granted the application. EOR 344.

**D. Appellants Serve the Subpoenas and the Government Moves to Quash; the Court Grants the Government's Motion and Dismisses the Application.**

Appellants served the subpoenas on October 4, 2017. EOR 318. The Government then moved to quash and for a protective order, arguing that (i) the district court lacked jurisdiction; and (ii) the information sought in the subpoenas was protected from disclosure by the state secrets privilege, the CIA Act, and the National Security Act. EOR 182–84. As to the jurisdictional argument, the Government claimed that the Application constituted an "action against the United States" regarding the conditions of confinement of an enemy combatant, and was

11

therefore prohibited by 28 U.S.C. § 2241(e)(2).[5]  EOR 186–87.  As to the state

secrets argument, the Government claimed that "information confirming or

denying whether the CIA conducted detention and interrogation activities in

Poland, or with the assistance of the Polish Government, could not be disclosed

without risking serious" harm to national security.  EOR 184.  The Government

attached a declaration by then-CIA Director Michael Pompeo in support of its

claim.  EOR 210.

Appellants countered that the proceeding was neither an "action" nor

"against the United States," as required to strip the district court of jurisdiction

under 28 U.S.C. § 2241(e)(2).  EOR 159–61.  As to the assertions of privilege, and

as relevant here, Appellants demonstrated that the subpoenas sought at least some

information that was neither protected by the state secrets privilege nor inseparable

from privileged matter.  Appellants pointed out that the Government had permitted

Mitchell and Jessen to testify about certain aspects of the dark sites in other

---

[5] "Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005, no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination." 28 U.S.C. § 2241(e)(2).

proceedings, and that, by the Government's own admission, "much information about the former detention and interrogation program has been officially declassified and released to the public."  EOR 169–77.  Appellants also invoked this Court's holding that, even where state secrets are at issue, "[w]henever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter."  EOR 169 (quoting *Mohamed v. Jeppesen Dataplan*, 614 F.3d 1070, 1082 (9th Cir. 2010)).  Thus, Appellants requested the district court grant the Government's motion only to the extent necessary to protect privileged matter.

The district court rejected the Government's jurisdictional argument, holding that the proceeding was not "against the United States or its agents" as required to deprive the court of jurisdiction.  EOR 47–49.  That ruling is not before this Court on appeal.  However, the district court upheld the Government's assertion of state secrets privilege as applied to all the discovery Appellants had requested.  Applying the three-part test articulated by this Court in *Mohamed v. Jeppesen Dataplan*, the court first determined that the Government had met the procedural requirements for invoking the privilege.  EOR 52–54 (citing *Jeppesen*, 614 F.3d at 1077).

Next, the court addressed the Government's privilege claim.  The court stated that it "[did] not find convincing the [Government's] claim that merely

acknowledging, or denying, the fact the CIA was involved with a facility in Poland poses an exceptionally grave risk to national security." EOR 58. The court noted that the presence of a CIA dark site in Poland was a fact that the European Court of Human Rights already had found "beyond a reasonable doubt"; that Poland's President at the time Abu Zubaydah was confined there afterwards confirmed the site's existence; that this fact was the subject of multiple governmental investigations in Poland and in Europe; and that the existence of the Polish dark site had been widely reported in the media. *Id.*

The court speculated, however, that due to the notoriety of these facts, "compelling Mitchell and Jessen to address the mere fact of whether they were part of CIA operations conducted in Poland, or whether they interrogated Zubaydah in Poland, would not seem to aid the Polish investigation." *Id.* The court predicted that for the discovery to be useful, Appellants would need "more detail as to what occurred and who was involved." *Id.* In the court's view, probing these issues would go too far: "[Q]uestions about the presence of Polish citizens, their identifies if known, and their involvement with the Detention and Interrogation Program legitimately could jeopardize national security." *Id.* The court therefore held that "operational details concerning the specifics of cooperation with a foreign government, including the roles and identities of foreign individuals, [are] covered by the claim of state secrets privilege." EOR 60.

14

Having determined that the state secrets privilege applied to some of the information sought in the Application, the court turned to the question of how the matter should proceed. The court acknowledged that "[g]enerally, there are three circumstances where the *Reynolds* [state secret] privilege justifies terminating the case." EOR 60–61. First, dismissal is warranted "if the plaintiff cannot prove the prima facie elements of his claim with nonprivileged evidence." *Id.* Second, the case should be dismissed "if the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim." *Id.* And third, a matter should not proceed where "litigating the case on the merits would present an unacceptable risk of disclosing state secrets because the privileged and nonprivileged evidence is 'inseparable.'" *Id.*

The court concluded that "[t]he first two circumstances are not applicable here, as this is purely a discovery proceeding." EOR 61. However, the court held that the third criterion was met, holding that "[m]eaningful discovery cannot proceed in this matter without disclosing information the Government contends is subject to the state secrets privilege," and that "[p]roceeding with discovery would present an unacceptable risk of disclosing state secrets." *Id.*

The court quashed the subpoenas and dismissed the Application on February 21, 2018. EOR 44. Appellants lodged a timely notice of appeal on March 15, 2018. EOR 65.

## II.     STANDARD OF REVIEW

This Court "review[s] de novo the interpretation and application of the state secrets doctrine," and reviews any underlying factual findings for clear error. *Jeppesen*, 614 F.3d at 1077.

## III.     SUMMARY OF THE ARGUMENT

The state secrets doctrine, as applied in this Circuit, requires the court to salvage the overall proceeding whenever possible.  Dispositive relief is permitted only in those rare instances where the matter cannot feasibly proceed without violating state secrets.  On the undisputed facts before the district court, this was not such an exceptional case.

The district court correctly noted that Appellants' subpoenas sought at least some information that was not privileged.  The court further concluded, again correctly, that Mitchell and Jessen are not employees of the Government for purposes of the subpoenas, and that the subpoenas therefore do not target the Government itself.  Additionally, Appellants placed into the record uncontroverted evidence that the Government has previously permitted Mitchell and Jessen to testify under oath on the <u>very same topics</u> that the subpoenas are concerned with. Thus, it was undisputed below that the subpoenas sought information that was neither privileged itself, nor  "inseparable" from privileged matter in a way would

preclude all inquiry under the state secrets doctrine. This Court's precedent therefore required the district court to permit some discovery to proceed.

Instead of doing so, the district court quashed Appellants' subpoenas due to a mistaken belief that discovery could not proceed in this matter unless it would be "useful" to Polish prosecutors. In so doing, the court not only departed from this Court's precedent, but also misconstrued the nature of its duties as arbiter of a Section 1782 application. The Supreme Court in *Intel* mandated four factors that a court should consider in ruling on a Section 1782 application, and the district court properly granted the Application as a threshold matter after applying those factors. But after the Government asserted the state secrets privilege, the court went outside the *Intel* analysis to apply a factor never endorsed by the Supreme Court: whether the information sought would be useful to Polish prosecutors. This improper additional factor conflicts with the rule developed by the federal courts, including this Court, that a court adjudicating a Section 1782 application should not attempt to predict the reception that the discovered evidence will receive in the foreign tribunal for which it is destined. This is because American courts are ill-suited forums to "delve into the mysteries of foreign law" when considering a request for judicial assistance under Section 1782.

Because neither the state secrets privilege nor Section 1782 provides a valid basis for quashing Appellants' subpoenas *in toto*, this Court should reverse and remand for further proceedings.

## IV.  ARGUMENT

It is possible to make correct findings of fact and proper legal judgments, yet come to the wrong result.  This is such a case.

Appellants Abu Zubaydah and Joseph Margulies seek discovery in aid of a foreign criminal investigation concerning Abu Zubaydah's torture at a CIA "dark site" in Poland.  The Government opposed this discovery, urging that disclosure of the cooperation of a foreign country and foreign nationals is a state secret.

In its ruling, the district court credited Appellants' argument that to be a state secret, a fact must first be secret, and—given the findings of the European Court of Human Rights, the Polish Government's own investigation, and other publicly disseminated information—the identity of Poland as host to a "dark site" is not a secret here.  The court further stated that it "[did] not find convincing the [Government's] claim that merely acknowledging, or denying, the fact the CIA was involved with a facility in Poland poses an exceptionally grave risk to national security."  EOR 58.  The court held that Mitchell and Jessen were independent contractors rather than Government agents, and thus properly ruled that the Government itself was not a target of the subpoenas.  EOR 48–49.  And, the court

18

properly rejected the Government's contention that, to exclude from discovery any information that *was* privileged, the court lacked authority to limit the subpoenas rather than quash them wholesale. EOR 60.

But the district court nevertheless concluded that the requested discovery should be denied in its entirety. In so doing, it incorrectly characterized the scope of the discovery Appellants sought, failed to consider trimming the subpoenas to allow access to non-privileged matter, and improperly considered the supposed "usefulness" to foreign investigators of the discovery the court might otherwise allow. These were reversible errors.

### A. The State Secrets Doctrine Permits Dispositive Relief Only Under Narrow Circumstances Not Present Here.

This case involves application of a draconian evidentiary privilege to the detriment of transparency, accountability, and justice: the state secrets doctrine. This Court has warned that invocation of the doctrine "places on the court the special burden to assure itself that an appropriate balance is struck between protecting national security matters and preserving an open court system." *Jeppesen*, 614 F.3d at 1081. "But," this Court has instructed, "the state secrets doctrine does not represent a surrender of judicial control over access to the courts." *Id.* at 1081-82. Rather, in assessing whether the disclosure of privileged information would expose matters which, in the interest of national security,

should not be divulged, courts must view claims of state secrets privilege with a "skeptical eye" and not accept such claims at "face value." *Id.* at 1082.

Over time, two distinct applications of the state secrets doctrine have developed:

(1)     the *Totten* bar, which altogether "bars adjudication of claims premised on state secrets"; and

(2)     the *Reynolds* privilege, which excludes only protected evidence, and can result in dismissal of a case only under narrowly defined circumstances.

*Id.* at 1077 (citing *Totten v. United States*, 92 U.S. 105 (1876); *United States v. Reynolds*, 345 U.S. 1 (1953)).

The *Totten* bar applies only where "the very subject matter of the action" is a state secret, such as a plaintiff's claim that itself is predicated on a protected fact. *Totten*, 92 U.S. at 105-07.[6]  The district court properly held that the *Totten* bar does not apply here.  EOR 51.  As the court found (EOR 57), the allegedly privileged matter in this case relates to a CIA detention and interrogation program that has

---

[6] In *Totten*, the Supreme Court upheld dismissal of a Civil War spy's suit against the Government because his alleged employment relationship with the Government was itself a state secret. *Id.*; *accord Tenet v. Doe*, 544 U.S. 1 (2005) (similar; Cold War spies); *Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*, 454 U.S. 139, 146 (1981) (dismissing claim predicated on whether nuclear weapons are being stored at a particular location, itself a state secret).

been public knowledge since at least 2010, when this Court in *Jeppesen* specifically declined to hold that "the existence of the [CIA] extraordinary rendition program is itself a state secret." 614 F.3d at 1090. And, in the nearly eight years since *Jeppesen* was decided, much more about the program has been publicly disclosed. The Senate Select Committee on Intelligence published extensive findings regarding the program (EOR 57), and the European Court of Human Rights determined beyond a reasonable doubt that a CIA black site existed in Poland (EOR 58). Thus, the district court properly concluded that the "very subject matter" of Appellants' application is not a state secret and the *Totten* bar does not apply. That holding is not on appeal.

In contrast, where material is protected by the *Reynolds* privilege, dismissal is supposed to be the exception, not the rule. This Court has held that in applying the *Reynolds* privilege, "[w]henever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." *Jeppesen*, 614 F.3d at 1082. Accordingly, "[t]here are [only] three circumstances when the *Reynolds* privilege would justify terminating a case":

> First, if the plaintiff cannot prove the prima facie elements of her claim with nonprivileged evidence, then the court may dismiss her claim as it would with any plaintiff who cannot prove her case.

> Second, if the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary judgment to the defendant.

> Third … it may be impossible to proceed with the litigation because –
> privileged evidence being inseparable from nonprivileged information –
> litigating the case to a judgment on the merits would present an
> unacceptable risk of disclosing state secrets.

*Id.* at 1083 (internal quotation marks, alteration, and citation omitted; paragraphing

altered).

### B. The District Court Erred in Holding that the *Reynolds* Privilege Required Dismissal, Where the Privileged Information at Issue Is Not "Inseparable" from Non-Privileged Information.

The district court correctly held that the first two *Reynolds* criteria for

dispositive relief are not met here. This matter does not test an affirmative claim

and a defendant's denial, but is merely an application for discovery. Hence, there

is no risk that Appellants will be deprived of evidence essential to prove prima

facie elements of their claim. Nor is there any risk that a defendant will be

deprived of information necessary to mount a valid defense.

The district court held, however, that dismissal was required because

"*meaningful* discovery cannot proceed in this matter" without the disclosure of

privileged material. EOR 61 (emphasis added). In other words, applying the third

*Reynolds* criterion, the court found it would be "impossible to proceed … because

– privileged evidence being inseparable from nonprivileged information –

litigating the case to a judgment on the merits would present an unacceptable risk

of disclosing state secrets." *Jeppesen*, 614 F.3d at 1083. And, the court added to

this criterion a concept of *meaningfulness*, making itself the arbiter of what

22

evidence might be meaningful (or useful) to a Polish prosecutor investigating

potential charges under Polish law.

The district court did not meaningfully consider trimming the application to

allow discovery of matters that it did not deem privileged.  It observed:

> [C]ompelling Mitchell and Jessen to answer as to the mere fact of
> whether operations were conducted in Poland would not seem of
> much, if any, assistance to a Polish investigation.  *Rather, counsel for
> Petitioner said it would be useful if Mitchell and Jessen could identify
> if there were foreign (Polish) officials at the detention site, and the
> nature of their roles at the site.*  In regard to these particulars, after
> review, the court defers to the CIA Director's assertion that the release
> of such information could reasonably pose a grave risk to national
> security.

EOR 63 (emphasis added).  In so holding, the court mischaracterized what

Appellants' counsel described as useful discovery.  Appellants' counsel did not

suggest, as the court indicated, that discovery would not be useful if it did not

include identification of Polish officials at the detention site or the nature of their

roles.  Rather, counsel argued:

> Without reference to Poland, Mitchell and Jessen could give the same
> kinds of information they gave in the *Salim* case.

> They could talk about, in addition, whether they traveled outside the
> United States to visit dark sites in 2002 and 2003.

> Whether they visited more than one dark site in different countries.

> Whether they saw Abu Zubaydah during their visits.

> What were the conditions of his confinement, treatment, medical care.

> Whether they saw foreign nationals during their visits.

> Frankly, if they did not, and it's possible, then that might end the investigation in Poland.

EOR 28. To be sure, counsel added:

> Now *ideally*, Your Honor, because we think that these are not state secrets at this point in time, we would prefer that Mitchell and Jessen be permitted to testify as to the identities of people and where it occurred.

> But the prosecutor already knows where the events occurred and my suspicion is he has a good idea, although I'm not privy to the specifics of his investigation, of who, you know, the targets are.

EOR 28–29 (emphasis added). This colloquy is a far cry from the district court's suggestion that identification of individuals and their roles would be the only "useful" information within the scope of the subpoenas. To the contrary, as Appellants' counsel explained, discovery of the other kinds of information counsel identified could, for example, supply a narrative that is missing, or complete the elements of a crime under Polish or European law. EOR 29. Information about what occurred at the black site and the general conditions of confinement there could be crucial to the Polish prosecutor in assessing the legal significance and classification of the facts. It might determine whether particular offenses can be charged under Polish or European law, such as harassment of a prisoner, unlawful duress to obtain a statement, illegal imprisonment, failure to report an offence, or exceeding official authority.

Notwithstanding Appellants' unchallenged description of potentially useful avenues of inquiry, the court effectively substituted its judgment for that of Polish

24

investigative authorities and speculated that discovery of admittedly non-privileged matter, such as the items counsel identified, "would not seem to aid the Polish investigation." EOR 58. In other words, the court dismissed the Application, not because the subpoenas sought exclusively privileged information or matter that was "inseparable from" state secrets, but because the court drew its own judgment that the non-privileged matter would not be "meaningful" for purposes of the Polish investigation. This was error.

### 1. At Most, the Application Sought Both Privileged and Non-Privileged Matter.

The district court rejected the Government's contention that "merely acknowledging, or denying, the fact the CIA was involved with a facility in Poland poses an exceptionally grave risk to national security." EOR 58. Thus, the Court held that this information was not a state secret. Because there is no basis to conclude that this non-privileged fact is "inseparable" from privileged facts, or that inquiry into this non-privileged fact "would present an unacceptable risk of disclosing state secrets," this alone required the district court to permit at least some discovery to proceed.

Moreover, the district court found that Mitchell and Jessen were not agents of the Government but, at most, independent contractors. EOR 49-50. Absent an agency relationship, Mitchell and Jessen cannot bind the Government by their testimony. Thus, even to the extent the Government has an interest in avoiding

acknowledging its involvement in a facility in Poland (notwithstanding that such information has been determined by other courts and is in the public domain), nothing in Mitchell or Jessen's testimony would constitute such an acknowledgment by the Government.

But in addition to the mere fact of CIA involvement at a Polish black site, Appellants' subpoenas sought further non-privileged matter that is undisputedly not inseparable from state secrets. As Appellants pointed out below, the Government has already permitted both Mitchell and Jessen to testify in another matter under oath, without objection from the Government, regarding various aspects of the detention and interrogation program. In the unrelated case of *Salim v. Mitchell*, 2:15-cv-286-JLQ (2015) (Quackenbush, J., presiding), Mitchell and Jessen both testified at deposition on the subject of the detention sites and their experiences while visiting those sites. *See* EOR 106–12 (excerpted Jessen testimony) & 114–149 (excerpted Mitchell testimony). And, relevant excerpts from that testimony were admitted into the record in this case without objection from the Government. *Id.* Where a specific detention site was under discussion in the *Salim* depositions, the site's declassified code name was used (e.g., "Detention Site Cobalt") rather than its actual name.

26

Thus, Jessen testified—without objection from the Government—about the specific time period of his visit to "Detention Site Cobalt":

Q. So this is – appears to be an account of an interview that was done with you in January 2003. Do you remember being interviewed around that time?

A. This is what I remember: After I left Cobalt, I went to another location to work and I couldn't get home, I didn't get home until, I don't know, *it was before Christmas*, but whenever it was.

EOR 109–10 (emphasis added).

Jessen also testified about the duration of his visit, and the things he saw and heard while at the site – again without objection from the Government:

Q. So there was some – some distinction made between him as a MVD [Medium Value Detainee] and someone else as an HVD [High Value Detainee]?

A. Eventually in the program it was a very clear distinction. … And with the exception of when I was at Cobalt for – *I was there for maybe two or three weeks*, I don't remember, that's the only time I saw or worked with any HVDs, as they came to be known ….

Q. And do you happen to know whether, after Mr. Rahman's death[7] and after you raised the – the concerns you raised about the facility at Cobalt, whether changes were made at Cobalt?

A. As I told you, before I left Cobalt, *I saw heaters*.

EOR 111–12 (emphases added).

---

[7] Former detainee Gul Rahman died of hypothermia while in CIA custody at Detention Site Cobalt, a fact that formed part of the basis for the plaintiffs' claims in *Salim*. *See* EOR 719.

Likewise, in his deposition in the *Salim* case, Respondent Mitchell testified about "coercive techniques" used upon Abu Zubaydah in his presence, "dietary manipulation," Abu Zubaydah's physical condition during interrogation, medical treatment he received, the effects of coercive techniques upon him, the use of waterboarding, and the use of enhanced interrogation techniques at dark sites identified by code name. EOR 114–149.

The Government was represented at both depositions by multiple attorneys for the specific purpose of "protect[ing] against the unauthorized disclosure of classified, protected or privileged Government information." EOR 107–08. It follows from the Government's failure to object that the Government does not deem privileged the timing of Mitchell's and Jessen's visits to detention sites; the duration of their visits; their general sensory perceptions, as such, while at the sites; Abu Zubaydah's conditions of confinement and interrogation; and general details regarding CIA dark sites identified by code name. It follows *a fortiori* that this information is not "inseparable from" privileged matter in a way that would preclude inquiry under the *Reynolds* doctrine.

Accordingly, consistent with the district court's duty "whenever possible" to "disentangle" sensitive and nonsensitive information to allow for release of the latter, *Jeppesen*, 614 F.3d at 1082, Appellants were entitled to discovery into at least the same categories information that were disclosed in *Salim*. Non-privileged

details about the Polish black site, no matter how seemingly irrelevant in the district court's view, might aid Polish prosecutors in bringing criminal actors to justice. Furthermore, Appellants conceded that if the mere existence of a site in Poland was deemed a state secret (a notion the district court explicitly rejected, EOR 58), discovery might proceed in this matter using the code name "Detention Site Blue," as was permitted in *Salim*. EOR 175–76. A close analogy underscores the potential utility of such discovery: Detention Site Cobalt, discussed in Mr. Jessen's deposition in *Salim*, is widely believed to have been located in Afghanistan. *See* EOR 151–54 (*How the CIA Tried to "Break" Prisoners in "The Salt Pit,"* NBC News, December 9, 2014). If an Afghan prosecutor were investigating the death by hypothermia of an individual detained at a CIA site in Afghanistan, Jessen's statement that "before I left Cobalt, I saw heaters," might be valuable evidence, even if the prosecutor had to confirm independently that the Afghan site and "Cobalt" were the same location.

Thus, on the undisputed facts before the district court, Appellants sought at least some information that was neither privileged nor inextricably intertwined with privileged matter. Under the *Reynolds* doctrine, the court was required to "disentangle" the privileged from the non-privileged matter, and permit release of the latter. *Jeppesen*, 614 F.3d at 1082. But instead, the district court imposed an additional requirement of its own invention, holding that discovery could not

proceed in this instance because the non-privileged matter "would not seem to aid" Polish prosecutors.  EOR 58.

> **2.  The District Court Improperly Inserted Its Own Views of the Utility of Non-Privileged Matter Into Its Consideration of the Motion to Quash.**

Even seemingly innocuous facts may aid Polish prosecutors in filling in gaps in their understanding.  Under *Reynolds*, Appellants were entitled to seek such information.

Although the district court did not explain the genesis of its "usefulness" requirement, its misapplication of the *Reynolds* doctrine may have stemmed from a misunderstanding of Section 1782, under which Appellants' subpoenas issued. Section 1782 permits discovery to be taken "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation."  28 U.S.C. § 1782(a).  But to say that discovery is "for use" in a foreign proceeding is not the same as requiring a judgment that it will be "useful" to Polish prosecutors.

As the Second Circuit has warned, district courts should be wary of "delv[ing] into the mysteries of foreign law" to deny discovery sought under Section 1782.  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1096 (2d. Cir. 1995).  In *Euromepa*, the court relied in part on a law review article by Professor Hans Smit, the chief drafter of Section 1782, who wrote that the drafters

considered it "wholly inappropriate for an American district court to try to obtain [a broad understanding of the subtleties of foreign law] for the purpose of honoring a simple request for assistance." *Id.* at 1099 (quoting Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L.J. 215, 235 (1994)). In fact, multiple federal courts of appeals, including this Court, have held that district courts adjudicating Section 1782 applications should not attempt to predict what reception the evidence discovered will be given in a foreign proceeding. *See, e.g., In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (potential inadmissibility of evidence is not grounds for denying Section 1782 application); *In re Request For Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea*, 555 F.2d 720, 724 (9th Cir. 1977) (same) *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) ("[T]he District Court erred because it misconstrued the 'for use' element of section 1782 as requiring [the applicant] to demonstrate that the discovery he seeks will be admitted in the [foreign proceeding]."); *In re Astra Medica, S.A.,* 981 F.2d 1, 7 n. 6 (1st Cir.1992) ("The district court need not explore whether the information the applicants seek is admissible in the foreign jurisdiction or other issues of foreign law."), *abrogated on other grounds by Intel,* 542 U.S. 241. If the very admissibility of evidence in a foreign proceeding is not a proper consideration for

the district court, perforce a strategic judgment concerning its "usefulness" in the foreign proceeding is also improper.

The Supreme Court's *Intel* decision sets out the factors a district court should consider in assessing whether to order discovery pursuant to Section 1782. The "usefulness," relevance, or even the admissibility of evidence are not among them. *Intel* specifies only that the district court should consider (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. (Notably, the district court ruled that Appellants' application satisfied this test, EOR 344.) The conspicuous absence of "usefulness in the foreign proceeding" from this list is not surprising. Even in U.S. practice, discovery is not limited to information that is admissible, but includes any information that may be relevant. Fed. R. Civ. P. 26(b)(1).

In *Intel*, the Supreme Court, too, warned that making discovery under Section 1782 dependent on an analysis of what is discoverable in a foreign court is "a slippery business." 542 U.S. at 263 n.15. The *Intel* Court rejected the rule,

previously developed by some federal courts, that evidence must be "discoverable" in the foreign proceeding in order to be discoverable under Section 1782. *Intel,* 542 U.S. at 249-61. Thus, there is consistent authority across the federal courts that the mere act of submitting the evidence to a foreign proceeding is itself the "use" required by Section 1782—regardless of what "use" it may ultimately be put to by a foreign tribunal. Here, Appellants will "use" the evidence they discover by submitting it to Polish prosecutors for consideration. EOR 71–74, 685. Whether that evidence is useful to Polish prosecutors is a determination that the district court was neither required nor, indeed, qualified to make.

### 3. The District Court Had Discretion to Reform the Subpoenas

The Government argued below that no amount of discovery could proceed in this matter because Petitioners' document subpoenas, by their terms, sought information related to "Poland," and whether a black site existed in Poland is itself a state secret. EOR 87–88. Setting aside that the district court rejected this aspect of the state secrets claim (EOR 58), the Government's argument ignores that under Section 1782, a district court may narrow discovery requests that are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. This discretionary authority under Section 1782 is entirely consonant with the district court's duty, under *Jeppesen*, to attempt to salvage the overall proceeding when the state secrets privilege has been asserted. 614 F.3d at 1082; *cf. Euromepa*, 51 F.3d at 1101

(district court should address concerns about scope of discovery under Section 1782 by "issuing a closely tailored discovery order rather than by denying relief outright").

The district court acknowledged that it had authority to "modify or limit the scope of the subpoena[s]," and rejected the Government's contrary contention. EOR 60. This makes even more puzzling the court's failure to narrow the subpoenas and permit some amount of discovery to proceed. Importantly, Appellants' counsel expressed openness to such modification of the subpoenas, both in briefing and at oral argument. EOR 28 (oral argument), 175–76 (briefing). While the district court in its opinion worried that it would be "disingenuous" to use an acknowledged alias for the dark site instead of its geographical name (EOR 61), the use of such an alias would be consistent with the practice adopted for "Detention Site Cobalt" in the *Salim* case, supervised by the same district judge. It would address the Government's need to avoid acknowledging that the site it operated was located in a particular country and involved particular individuals.

Throughout the proceedings below, the Government urged that the notoriety of Detention Site Blue—which Appellants believe to be in Poland—is not enough to vitiate its "secrecy." EOR 199–202. In the face of a binding judgment by the European Court of Human Rights, an official investigation by prosecutorial authorities in Poland, and the acknowledgment of a former President of Poland, the

Government argued that it nevertheless cannot be heard to "officially" acknowledge this dark site. But as Appellants argued below, if that is a valid basis for upholding the state secrets privilege, it is not because the "secret" itself remains intact. It is because *the Government* cannot be heard to acknowledge it. EOR 17–18, 25–27. The Government itself has said so. EOR 11.

It is important, therefore, that Appellants seek the testimony of Mitchell and Jessen, not the Government. The Government is an intervenor in this action, not the target of a subpoena. Significantly, the district court found (for other purposes) that Mitchell and Jessen were independent contractors, and were not agents of the Government. EOR 48–49. The court earlier made the same finding in *Salim v. Mitchell*, No. 15-cv-286-JLQ (ECF No. 135 at 5–7). Mitchell and Jessen therefore have no authority to bind the Government. Their acknowledgments are not acknowledgments on behalf of the Government. Their testimony concerning what the Polish Government has acknowledged and the European Court of Human Rights has found "beyond a reasonable doubt" does not lift the veil away from secrets. Nor does it require the Government to confirm them.

Nevertheless, in consideration of the Government's attendance at potential depositions, and to permit the Government to protect its legitimate secrets, Appellants have been and remain willing for the district court to trim their

35

subpoenas, as the statute authorizes it to do and as the case law directs. This Court should instruct the district court to do so.

## CONCLUSION

There is no legal basis for quashing all discovery in this matter. It is undisputed that Mitchell and Jessen have information relevant to the Polish investigation. It is also undisputed that the Government has freely permitted Mitchell and Jessen to divulge the same type of information in previous discovery proceedings. There can be no argument what was non-privileged and discoverable in *Salim*, is inseparable from privileged information in this case.

Despite widespread public, judicial, and governmental recognition that Abu Zubaydah was detained and tortured in Poland, to this day not one individual has been called to account. The Government's blanket assertion of privilege over all discovery in this proceeding, if upheld, will serve no purpose other than to ensure that this miscarriage of justice continues.

Accordingly, this Court should reverse and vacate the district court's order, and remand with instructions that discovery be permitted to proceed with regard to non-privileged matters.

**Dated**: June 25, 2018                    Respectfully submitted,

                                             /s/ *David F. Klein*
                                             David F. Klein
                                             david.klein@pillsburylaw.com
                                             John Chamberlain

john.chamberlain@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN
LLP
1200 Seventeenth Street, NW
Washington, DC 20036
(202) 663-8000

Jerry Moberg
jmoberg@jmlawps.com
JERRY MOBERG & ASSOCIATES
451 Diamond Drive
Ephrata, WA 98823
509-754-2356

*Attorneys for Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8481 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font size and Times New Roman type style.

*/s/ David F. Klein*
Attorney for Appellants

## <u>CERTIFICATE OF DIGITAL SUBMISSIONS AND PRIVACY REDACTIONS</u>

I hereby certify that in the above and foregoing all required privacy redactions have been made.

I hereby certify that the above and foregoing ECF submission was scanned for viruses with the most recent version of Microsoft System Center Endpoint Protection updated on June 25, 2018, and according to the program is free of viruses.

*/s/ David F. Klein*
Attorney for Appellants

## STATEMENT REGARDING PRIOR AND RELATED APPEALS

There are no prior or related appeals.

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** <u>18-35218</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [8481] words or [36] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [　　　　]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant   [/s David F. Klein]   Date [6/25/2018]

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 25, 2018, I electronically filed the foregoing

**APPELLANTS' OPENING BRIEF** with the Clerk of the Court using the CM/ECF

system, which will send email notification of such filing to attorneys of record.


_/s/ David F. Klein_____
Attorney for Appellants